**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

)
TERESITA A. CANUTO,                      )
                                         )
            Plaintiff,                   )
                                         )
      v.                                 ) Civil Action No. 16-2282 (EGS)
                                         )
JAMES MATTIS,[1] Secretary of            )
Defense, *et al.*,                       )
                                         )
            Defendants.                  )
_____)

## MEMORANDUM OPINION

Teresita Canuto, proceeding *pro se*, has filed suit against two United States Army officers and various senior federal officials (collectively "federal defendants") and the private entities DePauw HK Property Management ("DePauw"), Cirrus Asset Management, Inc. ("Cirrus"), and Bank of America, N.A. ("Bank of America"). The gravamen of Ms. Canuto's complaint is that members of the United States armed forces have sexually assaulted her on a number of occasions after infiltrating her home and using sleeping gas to render her unconscious.[2] She

---

[1] Public officers sued in their official capacity who have ceased to hold office since the commencement of this action have been automatically substituted with their successors under Federal Rule of Civil Procedure 25(d).

[2] Ms. Canuto has filed a series of lawsuits based on nearly identical factual allegations in the United States Court of Federal Claims. Each of her complaints there was dismissed. *See Canuto v. United States*, No. 15-410C, 2015 WL 1926375 (Fed. Cl. Apr. 27, 2015); *Canuto v. United States*, No. 15-821C, 2015 WL 8481577 (Fed. Cl. Dec. 9, 2015); *Canuto v. United States*, No.

1

asserts various constitutional, federal statutory, and state common law claims.

DePauw has filed a Motion to Quash Service and/or in the Alternative Motion to Dismiss Pursuant to Rule 12(b)(5) ("DePauw's Mot."), ECF No. 5; Cirrus has filed a Motion to Dismiss Plaintiff's Amended Complaint for Lack of Personal Jurisdiction ("Cirrus' Mot."), ECF No. 11; and Bank of America has filed a Motion to Dismiss the claims against it on statute of limitations grounds ("BOA's Mot."), ECF No. 16.[3] Upon consideration of these motions, the responses and replies thereto, the relevant law, and the entire record, the Court **GRANTS IN PART** and **DENIES IN PART** DePauw's motion; **GRANTS** Cirrus' motion; and **GRANTS** Bank of America's motion.

---

16-414C, 2016 WL 8710473 (Fed. Cl. May 4, 2016). The United States Court of Appeals for the Federal Circuit affirmed each of those dismissals. *See Canuto v. United States*, 615 F. App'x 951 (Fed. Cir. 2015); *Canuto v. United States*, 651 F. App'x 996 (Fed. Cir. 2016) (per curiam); *Canuto v. United States*, 673 F. App'x 982 (Fed. Cir. 2016) (per curiam).

[3] The federal defendants have yet to file a responsive pleading or a motion to dismiss because they have yet to be served. The Court will resolve the now-pending motions to dismiss and, in a separate Order, will direct Ms. Canuto to serve the federal defendants and file proof of that service by a date certain. If she fails to provide proof of service by that date or fails to provide an adequate written explanation as to why service has not been completed, the Court will dismiss the claims against the federal defendants without prejudice. *See* Fed. R. Civ. P. 4(m).

## I.  Background[4]

Ms. Canuto alleges that members of the United States armed forces, assisted by "illegal foreigners" and other civilians and acting under the direction of senior military officers and senior federal officials, sexually assaulted her on numerous occasions from October 2014 to the present. Am. Compl., ECF No. 10 at 6-14, 16, 21-22, 67-69.[5] She contends that the federal officials orchestrated these attacks to punish her and her husband for seeking an award under the National Vaccine Injury Compensation Program, 42 U.S.C. §§ 300aa-10 *et seq.*, as compensation for their son's autism, which they believe was caused by his receipt of certain vaccinations. *Id.* at 16; *see Canuto v. Sec'y of HHS*, 660 F. App'x 955 (Fed. Cir. 2016) (per curiam).

She alleges that the assaults were first perpetrated in her apartment unit in a Panorama City, California apartment building that is managed by DePauw. Am. Compl., ECF No. 10 at 13, 21. In July 2016, she moved to a Northridge, California apartment

---

[4] The Court **GRANTS** Ms. Canuto's Motion of Plaintiff to Make an Amendment Due to Error Noticed in the Filed Amended Complaint, ECF No. 13, and will consider the operative complaint to be her amended complaint, *see* Am. Compl., ECF No. 10, further amended by the four very minor changes that she seeks to make to her amended complaint by means of her Motion of Plaintiff to Make an Amendment Due to Error Noticed in the Filed Amended Complaint.
[5] Page-number citations to documents the parties have filed refer to the page numbers that the Court's electronic filing system assigns.

building managed by Cirrus, where she alleges that the assaults have continued to occur. *See id.* at 14, 22. In both locations, Ms. Canuto alleges that her assailants have carried out the assaults by first cutting holes in the ceiling to gain access to the apartment and then releasing sleeping gas to put her into a "deep sleep," leaving her defenseless against their attacks. *Id.* at 7, 13, 21-22, 41. She contends that when she wakes in the morning, she knows that she has been assaulted because she has cuts and bruises on various parts of her body. *See id.* at 14, 21-35, 53-80. She also alleges that her assailants frequently follow her when she is driving, *id.* at 6-13, 21, 36, 39, and she alleges that they have stolen various items from her apartment and car, including medical and hospitalization records. *Id.* at 12, 22, 37, 40-41. Ms. Canuto contends that she has a history of having important documents and records stolen from her, as, on some unspecified date in 2009, various documents went missing from a safe deposit box that she had at a Bank of America branch location in Panorama City, California. *Id.* at 11, 40.

Based on these factual allegations, Ms. Canuto alleges that the defendants have violated her Fourteenth Amendment due process and equal protection rights, and she cites 18 U.S.C. § 242, 42 U.S.C. § 1981, and 42 U.S.C. § 1983 as statutory bases for relief. *Id.* at 5-9, 20. She also asserts various state common law claims. *Id.* at 15-16, 20. She seeks monetary damages,

the return of the items allegedly stolen from her, and the
production of the names of the persons who allegedly followed
and assaulted her and the names of the Bank of America employees
who had access to her safe deposit box. *Id.* at 41-42.

## II.  Analysis

### A.   DePauw's Motion to Quash Service and/or Dismiss

DePauw moves to quash the service of process against it
"and/or in the alternative" to dismiss the claims against it.
DePauw's Mot., ECF No. 5 at 1. DePauw rests its motion on two
arguments. It argues that, per Federal Rule of Civil Procedure
17(b), it is not an entity that is capable of being sued, *id.* at
7-9, and, in any event, that service of process as to it was
deficient. *Id.* at 4-7.

For the reasons that follow, the Court concludes that Ms.
Canuto has sued a suable entity——she has just misnamed that
entity. Even so, the Court concludes that service was deficient
as to that suable entity, so the Court will quash the attempted
service and permit Ms. Canuto another opportunity to serve the
properly named suable entity.

### 1.   Capacity and Misnomer

The Court will analyze the capacity issue first. *See Tri-
Med Fin. Co. v. Nat'l Century Fin. Enters., Inc.*, Nos. 98-3617,
99-3062, 2000 WL 282445, at *4 (6th Cir. Mar. 6, 2000)
(describing capacity as a "threshold issue"). Federal Rule of

5

Civil Procedure 17(b) governs capacity. In relevant part, it provides:

> Capacity to sue or be sued is determined as follows:
>
> (1) for an individual who is not acting in a representative capacity, by the law of the individual's domicile;
>
> (2) for a corporation, by the law under which it was organized; and
>
> (3) for all other parties, by the law of the state where the court is located, except that:
>
>> (A) a partnership or other unincorporated association with no such capacity under that state's law may sue or be sued in its common name to enforce a substantive right existing under the United States Constitution or laws . . . .

Fed. R. Civ. P. 17(b). DePauw contends that because Ms. Canuto does not allege that it is an incorporated entity, its capacity to be sued is governed by the law of the District of Columbia per Federal Rule 17(b)(3). DePauw's Mot., ECF No. 5 at 7-8. It then argues that it is not a suable entity under the relevant Rule 17(b)(3) analysis. *See id.* at 8-9.

The Court concludes, however, that it need not address the doctrinal niceties of the Rule 17(b)(3) analysis that concern the suability of a non-individual, non-corporate party because, in the Court's view, there is not really a capacity problem here. Rather, Ms. Canuto has brought suit against a suable California corporation——Woodman-Sylvan Properties, Inc.——but she

6

has mistakenly named that corporation "DePauw HK Property Management" in her complaint.

A Google search for "DePauw HK Property Management" reveals, on the first page of responsive hits, a link to the website of an entity called "Woodman Sylvan Properties." *See* "DePauw HK Property Management," *Google Search*, https://www.google.com/search?q=DePauw+HK+Property+Management (last visited Aug. 1, 2017).[6] The website of Woodman Sylvan Properties, in turn, explains that its properties "were managed and developed under the ownership of H.K. DePauw" and that the business is "still family owned." *See* Woodman Sylvan Properties "About Us" Page, http://www.woodmansylvan.com/aboutus (last visited Aug. 1, 2017). The address listed for Woodman Sylvan Properties on its website is 12514 Moorpark Street, Studio City, California 91604, *see id.*——the exact address Ms. Canuto provided for DePauw in her complaint, *see* Am. Compl., ECF No. 10 at 4, and the exact address at which she attempted to serve DePauw by mail. *See* DePauw's Mot., ECF No. 5 at 3. A search of the California Secretary of State's California Business Search Database for a corporation named "Woodman Sylvan Properties" reveals a Statement of Information for a corporation named

---

[6] The Court may take judicial notice of the information provided on the websites that it has consulted. *See Nat'l Grange of the Order of Patrons of Husbandry v. Cal. State Grange*, 182 F. Supp. 3d 1065, 1082 n.5 (E.D. Cal. 2016).

"Woodman-Sylvan Properties, Inc." *See* "Woodman Sylvan Properties," *California Business Search*, https://businesssearch.sos.ca.gov/ (last visited Aug. 1, 2017).[7] The address of that corporation is 12514 Moorpark Street, Studio City, California 91604; its agent for service of process, who receives service of process at the corporation's Studio City address, is a person named Elizabeth DePauw Jacobson; and all key officers and all directors of the corporation share a common name of DePauw. *See* Statement of Information, Filed with California Secretary of State on July 25, 2016.

Ms. Canuto is clearly suing the corporate entity Woodman-Sylvan Properties even though she has named "DePauw HK Property Management" as a defendant in her complaint. The issue thus most squarely before the Court is "not one of capacity to be sued, but merely one of mistaken identity." *Montalvo v. Tower Life Bldg.*, 426 F.2d 1135, 1146 (5th Cir. 1970) (holding that misnomer, not capacity to be sued, was the relevant issue when a building, rather than the corporation that owned the building, was named as the defendant in a complaint). Because there is no doubt concerning the suability of a California corporation, *see*

---

[7] The Court may take judicial notice of filings with the California Secretary of State. *See Nat'l Grange of the Order of Patrons of Husbandry v. Cal. State Grange*, 182 F. Supp. 3d 1065, 1075 n.3 (E.D. Cal. 2016).

Fed. R. Civ. P. 17(b)(2); Cal. Corp. Code § 105, there is a suable entity here: Woodman-Sylvan Properties.

Given the Court's duty to grant leave to amend a complaint "when justice so requires," Fed. R. Civ. P. 15(a)(2), and its authority to grant that leave *sua sponte*, *e.g.*, *Town of Islip v. Datre*, No. 16-2156, 2017 WL 1157188, at *25 (E.D.N.Y. Mar. 28, 2017), the Court will permit Ms. Canuto leave to amend her complaint to replace defendant "DePauw HK Property Management" with defendant "Woodman-Sylvan Properties, Inc."

### 2. Service of Process

Assuming that Woodman-Sylvan Properties were standing in the shoes of DePauw, there is still a service of process problem as to that corporate defendant.

Pursuant to Federal Rule of Civil Procedure 4(h)(1) a corporation must be served:

> (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or
>
> (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and——if the agent is one authorized by statute and the statute so requires——by also mailing a copy to the defendant . . . .

Fed. R. Civ. P. 4(h)(1). Here, Ms. Canuto attempted to serve DePauw/Woodman-Sylvan Properties by delivering the summons and the complaint by certified mail. *See* Certified Mail Receipt, ECF

No. 6 at 2. Service by mail is deficient under Federal Rule 4(h)(1)(B). *Wesenberg v. New Orleans Airport Motel Assocs. TRS, LLC*, No. 14-1632, 2015 WL 5599012, at *2 (E.D. La. Sept. 22, 2015) ("Courts have consistently held . . . that Rule 4(h)(1)(B)'s delivery requirement refers to personal service, not service by mail."). That leaves Ms. Canuto to rely upon Federal Rule 4(h)(1)(A), which, as explained above, triggers Federal Rule 4(e)(1).

Federal Rule 4(e)(1) permits service by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). The relevant state law of California (the state "where service is made") and of the District of Columbia (the state where this District Court is located) is the state law "authorizing service of process on a corporation, not the [law] authorizing service on an individual." *James v. Booz-Allen & Hamilton, Inc.*, 206 F.R.D. 15, 17 (D.D.C. 2002).

As concerns service of process on DePauw/Woodman-Sylvan Properties pursuant to California law, there are two deficiencies with Ms. Canuto's attempted service of process here. First, California law permits service by mail, but service by mail requires delivery of two copies of a statutorily-specified notice and acknowledgement form and "a return

envelope, postage prepaid, addressed to the sender" along with the summons and the complaint. *See* Cal. Civ. Proc. Code § 415.30.[8] Ms. Canuto has not demonstrated compliance with the

---

[8] Section 415.30 states in relevant part:

> (a) A summons may be served by mail as provided in this section. A copy of the summons and of the complaint shall be mailed (by first-class mail or airmail, postage prepaid) to the person to be served, together with two copies of the notice and acknowledgement provided for in subdivision (b) and a return envelope, postage prepaid, addressed to the sender.

> (b) The notice specified in subdivision (a) shall be in substantially the following form:

> **(Title of court and case, with action number, to be inserted by the sender prior to mailing)**

> **NOTICE**

> To: (Here state the name of the person to be served.)

> This summons is served pursuant to Section 415.30 of the California Code of Civil Procedure. Failure to complete this form and return it to the sender within 20 days may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons upon you in any other manner permitted by law. If you are served on behalf of a corporation, unincorporated association (including a partnership), or other entity, this form must be signed in the name of such entity by you or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. Section 415.30 provides that this summons is deemed served on

notice and acknowledgement form and return envelope

requirements. Second, there are four categories of persons

through whom a corporation may be served: (1) the person

designated as an agent for service of process;[9] (2) certain

statutorily-specified officers and agents of the corporation;

(3) if the corporation is a bank, a cashier or assistant

cashier; or (4) in certain circumstances, the California

Secretary of State. Cal. Civ. Proc. Code § 416.10. Here,

Emmelene A. Pableo received the summons and the complaint that

Ms. Canuto sent via certified mail. *See* Decl. of Emmelene A.

---

the date of execution of an acknowledgment of
receipt of summons.

_____
Signature of Sender

**ACKNOWLEDGMENT OF RECEIPT OF SUMMONS**

This acknowledges receipt on (insert date) of
a copy of the summons and of the complaint at
(insert address).

Date:_____

(Date this acknowledgment is executed)

_____
Signature of person
acknowledging receipt,
with title if
acknowledgment is made on
behalf of another person

[9] As indicated above, that person is Elizabeth DePauw Jacobson.
*See* Statement of Information, Filed with California Secretary of
State on July 25, 2016.

Pableo, ECF No. 5-2 ¶ 3. Although Ms. Pableo works at the address of Woodman-Sylvan Properties, *see id.* ¶ 5, she does not appear to be a person who readily falls within one of the four categories of persons through whom that corporation may be served. Accordingly, service of that corporation was deficient under California law.

As concerns service of process on DePauw/Woodman-Sylvan Properties pursuant to District of Columbia law, there are also deficiencies rendering Ms. Canuto's attempted service improper. First, District of Columbia Superior Court Rule of Civil Procedure 4(h)(1)(B) permits service of a corporation by delivering the summons and the complaint "to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process," D.C. Super. Ct. R. Civ. P. 4(h)(1)(B), but, based on her declaration, Ms. Pableo——the person to whom the summons and the complaint were delivered——does not appear to fit any of those designations. *See* Decl. of Emmelene A. Pableo, ECF No. 5-2. District of Columbia Superior Court Rule of Civil Procedure 4(h)(1)(A) alternatively permits a corporation to be served "in the manner prescribed by [District of Columbia Superior Court Rule of Civil Procedure] 4(e)(1) for serving an individual." D.C. Super. Ct. R. Civ. P. 4(h)(1)(A). That Rule, in turn, permits service by "following District of Columbia law, or the

state law for serving a summons in an action brought in courts
of general jurisdiction in the state where service is made."
D.C. Super. Ct. R. Civ. P. 4(e)(1). Service by mail under the
law of California——"the state where service is made"——was
deficient for the reasons articulated in the immediately
preceding paragraph. As to District of Columbia law, service by
mail can be achieved by sending the summons and the complaint by
first-class mail, but that method of service requires sending
two copies of a notice and acknowledgement form and "a return
envelope, postage prepaid, addressed to the sender," D.C. Super.
Ct. R. Civ. P. 4(c)(5), and, again, Ms. Canuto has not
demonstrated compliance with such requirements. Service can also
be accomplished by mailing a copy of the summons and the
complaint "to the person to be served by registered or certified
mail, return receipt requested." D.C. Super. Ct. R. Civ. P.
4(c)(4). Ms. Canuto has not demonstrated that her certified
mailing satisfied the "return receipt requested" requirement,
*see* Certified Mail Receipt, ECF No. 6 at 2 (showing unchecked
"Return Receipt" boxes), and, additionally, "the person to be
served by registered or certified mail" is Woodman-Sylvan
Properties' designated agent for service of process, Elizabeth
DePauw Jacobson, not Ms. Pableo. *See Ilaw v. Dep't of Justice*,
309 F.R.D. 101, 105 & n.3 (D.D.C. 2015) (holding that service as
to a corporate entity was improper under District of Columbia

law when the summons and the complaint were mailed to the

corporate entity but were signed for by someone who was not an

officer or registered agent of that entity).[10]

Thus service was not proper under federal, District of

Columbia, or California law as to the suable but misnamed

corporate defendant Woodman-Sylvan Properties. "Although the

Court has the authority to dismiss an action outright on the

basis of insufficient service of process, the court can, in its

sound discretion, direct that service be effected within a

---

[10] Although service was deficient under District of Columbia law
for the reasons articulated, D.C. Code § 13-334(a) does not pose
a service of process obstacle here, contrary to DePauw/Woodman-
Sylvan Properties' argument otherwise. *See* DePauw's Mot., ECF
No. 5 at 6-7. Section 13-334(a) only mandates that a corporation
be served in the District of Columbia when that corporation
actually transacts some business in the District of Columbia.
*See* D.C. Code § 13-334(a) ("In an action against a foreign
corporation *doing business in the District* . . . .") (emphasis
added); *cf. Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506,
514 (D.C. Cir. 2002) ("Where the basis for obtaining
jurisdiction over a foreign corporation is § 13-334(a), as it is
here, a plaintiff who serves the corporation by mail outside the
District is foreclosed from benefitting from [the statute's]
jurisdictional protection.") (internal quotation marks omitted).
Section 13-334(a) does not present a service of process barrier
where DePauw/Woodman-Sylvan Properties is concerned, as it does
not appear that that corporation conducts any business in the
District of Columbia. DePauw/Woodman-Sylvan Properties' lack of
contact with the District of Columbia might constitute a
personal jurisdiction problem, but DePauw/Woodman-Sylvan
Properties did not move to dismiss on that basis, and the Court
is foreclosed from addressing that issue *sua sponte*. *Kapar v.
Kuwait Airways Corp.*, 845 F.2d 1100, 1105 (D.C. Cir. 1988)
("[B]ecause personal jurisdiction may be conferred by consent of
the parties, expressly or by failure to object, a court may not
*sua sponte* dismiss for want of personal jurisdiction . . . .")
(internal quotation marks omitted).

specified time, quashing the defective service without dismissing the case." *Estate of Scherban v. Suntrust Bank*, No. 15-1966, 2016 WL 777913, at *4 (D.D.C. Feb. 26, 2016) (internal quotation marks omitted). "Dismissal is generally inappropriate when there exists a reasonable prospect that service may yet be obtained." *Angelich v. MedTrust, LLC*, 910 F. Supp. 2d 128, 132 (D.D.C. 2012). Further, quashing rather than dismissing is all the more reasonable where a *pro se* plaintiff is concerned, as a *pro se* plaintiff deserves "some leniency in applying the rules for effective service of process." *Roland v. Branch Banking & Trust Corp.*, 149 F. Supp. 3d 61, 66 (D.D.C. 2015).

Accordingly, the Court **GRANTS** DePauw's motion to quash service of process and **DENIES** its motion to dismiss the claims against it. Ms. Canuto shall have 30 days from the date of this Memorandum Opinion and its accompanying Order (1) to amend her complaint to replace defendant "DePauw HK Property Management" with defendant "Woodman-Sylvan Properties, Inc.," and (2) to effect proper service on Woodman-Sylvan Properties.

**B. Cirrus' Motion to Dismiss**[11]

Cirrus moves to dismiss the claims against it for lack of personal jurisdiction. *See* Cirrus' Mot., ECF No. 11.[12] For the reasons that follow, the Court concludes that it lacks personal jurisdiction over Cirrus, and, accordingly, its motion will be granted.[13]

Under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing a factual basis for personal jurisdiction. *Okolie v. Future Servs. Gen. Trading & Contracting Co., W.L.L.*, 102 F. Supp. 3d 172, 175 (D.D.C. 2015) (citing *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990)). To meet that burden, the plaintiff "'must allege specific acts connecting [the] defendant with the forum.'" *Id.* (quoting *Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001)). When making a personal jurisdiction determination, a court need not treat all of the

---

[11] Because amendment of the complaint to correct misnomer as to one defendant will not change the analysis applicable as to the now-pending motions to dismiss filed by Cirrus and Bank of America, the Court will proceed to rule on those motions.

[12] Cirrus also purports to reserve its right to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule 12(b)(6) in the event that dismissal is not granted as to it on personal jurisdiction grounds. Cirrus' Mem. in Supp. of Mot. to Dismiss Am. Compl. for Lack of Personal Jurisdiction ("Cirrus' Mem. Supp."), ECF No. 11 at 10 n.3.

[13] Cirrus' earlier-filed motion to dismiss——which was filed prior to Ms. Canuto's filing of her amended complaint, *see* Cirrus' Mot. to Dismiss Pl.'s Compl. for Lack of Personal Jurisdiction, ECF No. 8——is **DENIED AS MOOT.**

plaintiff's allegations as true. *Bricklayers & Trowel Trades Int'l Pension Fund v. Valley Concrete, Inc.*, No. 16-1684, 2017 WL 2455028, at *2 (D.D.C. June 6, 2017). Instead, the court may "receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts." *Id.* (internal quotation marks omitted).

Assessing whether a court may exercise personal jurisdiction over a defendant "typically implicates a state's jurisdictional statute or rule." *Alkanani v. Aegis Def. Servs., LLC*, 976 F. Supp. 2d 13, 21 (D.D.C. 2014) (internal quotation marks and alteration omitted). That is the case as concerns Cirrus, so this Federal District Court has personal jurisdiction over Cirrus only if a District of Columbia court could exercise personal jurisdiction over Cirrus. *See* Fed. R. Civ. P. 4(k)(1)(A).[14] "Two requirements must be met for a District of

---

[14] To the extent that Ms. Canuto means to assert federal statutory claims against Cirrus, *see* Am. Compl., ECF No. 10 at 5-9, 20; Pl.'s Opp. to Cirrus' Mot., ECF No. 18 at 1, none of the statutes that she cites contemplates nationwide service of process. *See Locke v. FedEx Freight, Inc.*, No. 12-708, 2012 WL 7783085, at *4 (D. Colo. Aug. 31, 2012) (explaining that 42 U.S.C. § 1981 and 42 U.S.C. § 1983 do not confer nationwide service of process); *cf. McCray v. Holder*, 391 F. App'x 887, 888 (D.C. Cir. 2010) (per curiam) (explaining that there is no private right of action under 18 U.S.C. § 242). Accordingly, this Court's exercise of personal jurisdiction is not "authorized by a federal statute," *see* Fed. R. Civ. P. 4(k)(1)(C), and instead is limited to the exercise of personal jurisdiction of a court of general jurisdiction in the District of Columbia. *See* Fed. R. Civ. P. 4(k)(1)(A).

Columbia court to exercise personal jurisdiction over a defendant." *Bradley v. DeWine*, 55 F. Supp. 3d 31, 39 (D.D.C. 2014). "First, the defendant must qualify for either general or specific jurisdiction under the relevant District of Columbia statutes." *Id.* "Second, the exercise of jurisdiction over the defendant must comply with the Due Process Clause of the Fourteenth Amendment." *Id.* at 39-40. General jurisdiction permits the Court to adjudicate "any and all claims" brought against the defendant. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Specific jurisdiction, on the other hand, "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* (internal quotation marks omitted).

For the reasons that follow, the Court can exercise neither general nor specific jurisdiction over Cirrus.

### 1. General Jurisdiction

There are two District of Columbia statutes that confer general jurisdiction. *King v. Caliber Home Loans, Inc.*, 210 F. Supp. 3d 130, 136 (D.D.C. 2016). One, D.C. Code § 13-422, states that a "District of Columbia court may exercise personal jurisdiction over a person domiciled in, organized under the laws of, or maintaining his or its principles place of business in, the District of Columbia as to any claim of relief." D.C. Code § 13-422.

Here, Ms. Canuto has not alleged any facts that could satisfy any of these criteria. *See generally* Am. Compl., ECF No. 10; Pl.'s Opp. to Cirrus' Mot., ECF No. 18; Pl.'s Surreply to Cirrus' Reply, ECF No. 26.[15] To the contrary, Cirrus' President has averred that Cirrus is a corporation that is organized under the laws of California and that maintains its principal place of business in California. Aff. of Steve Heimler, ECF No. 11-2 ¶¶ 2-3. Accordingly, the Court is unable to exercise general jurisdiction over Cirrus pursuant to § 13-422.

The other general jurisdiction statute, D.C. Code § 13-334, permits the exercise of personal jurisdiction over "a foreign corporation doing business in the District." D.C. Code § 13-334(a). The reach of this "doing business" general jurisdiction under § 13-334(a) is co-extensive with the reach of general jurisdiction under the Due Process Clause. *Day v. Cornèr Bank (Overseas) Ltd.*, 789 F. Supp. 2d 150, 156 (D.D.C. 2011). Thus this Court can exercise "doing business" general jurisdiction over Cirrus only if its contacts with the District of Columbia "are so 'continuous and systematic' as to render [it]

---

[15] Cirrus has moved to strike Ms. Canuto's surreply. *See* Cirrus' Mot. to Strike, ECF No. 28. In response, Ms. Canuto has filed a motion to defend her surreply. *See* Pl.'s Mot. to Defend, ECF No. 31. In view of Ms. Canuto's *pro se* status, the Court **DENIES** Cirrus' motion to strike and **GRANTS** Ms. Canuto's motion to defend. *See Buaiz v. United States*, 471 F. Supp. 2d 129, 133 (D.D.C. 2007) (accepting and considering a plaintiff's surreply because that plaintiff was proceeding *pro se*).

essentially at home" in the District. *Goodyear*, 564 U.S. at 919.

The Court cannot exercise "doing business" general jurisdiction over Cirrus because Ms. Canuto has not alleged that Cirrus has had *any* contacts with the District of Columbia, let alone continuous and systematic contacts. *See generally* Am. Compl., ECF No. 10; Pl.'s Opp. to Cirrus' Mot., ECF No. 18; Pl.'s Surreply to Cirrus' Reply, ECF No. 26. Again, to the contrary, Cirrus' President has averred that Cirrus has never managed any properties in the District, has no offices in the District, has never conducted any business in the District, and does not solicit business or derive any revenue from goods or services rendered in the District. Aff. of Steve Heimler, ECF No. 11-2 ¶¶ 8-11. Cirrus is certainly not "at home" in the District of Columbia; it is not even a frequent guest. Accordingly, the Court is unable to exercise general jurisdiction over Cirrus pursuant to § 13-334(a).

Accordingly, this Court cannot exercise general jurisdiction over Cirrus.

### 2. Specific Jurisdiction

D.C. Code § 13-423 authorizes the exercise of specific jurisdiction under certain enumerated circumstances, including when an entity transacts any business in the District; contracts to supply services in the District; causes tortious injury in the District; or has an interest in, uses, or possesses real

property in the District. D.C. Code § 13-423(a)(1)-(5). As explained above, Ms. Canuto has not alleged that Cirrus has had *any* contacts with the District of Columbia, *see generally* Am. Compl., ECF No. 10; Pl.'s Opp. to Cirrus' Mot., ECF No. 18; Pl.'s Surreply to Cirrus' Reply, ECF No. 26, and Cirrus' President's affidavit confirms that Cirrus has absolutely no connection of any sort to the District of Columbia, let alone any connection that constitutes the conduct listed in § 13-423(a). *See generally* Aff. of Steve Heimler, ECF No. 11-2. Moreover, even if Ms. Canuto were able to establish contact between the District of Columbia and Cirrus, she "has not shown that [her] claims 'aris[e] from acts enumerated in' the District's long-arm statute or that the exercise of jurisdiction would satisfy due process." *Capital Bank Int'l Ltd. v. Citigroup, Inc.*, 276 F. Supp. 2d 72, 77 (D.D.C. 2003) (citing D.C. Code § 13-423(b); *Gorman*, 293 F.3d at 509; *Koteen v. Bermuda Cablevision, Ltd.*, 913 F.2d 973, 974-75 (D.C. Cir. 1990)). Thus, this Court cannot exercise specific jurisdiction over Cirrus.[16]

---

[16] Ms. Canuto's arguments to the contrary are unavailing. Her assertion that the Court has federal question jurisdiction does not solve the personal jurisdiction problem where Cirrus is concerned. *See* Pl.'s Opp. to Cirrus' Mot., ECF No. 18 at 1. Federal question jurisdiction is a form of subject matter jurisdiction and whether it exists does not change the Court's personal jurisdiction analysis in this case. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999) ("Jurisdiction to

Accordingly, the Court is unable to exercise personal jurisdiction over Cirrus. Thus the Court **GRANTS** Cirrus' motion to dismiss for lack of personal jurisdiction.

### C. Bank of America's Motion to Dismiss

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Bank of America moves to dismiss the claims against it on statute of limitations grounds. *See* Bank of America's Mem. in Supp. of Mot. to Dismiss ("BOA's Mem. Supp."), ECF No. 16-1 at 1. Bank of America contends that the only allegations concerning it in Ms. Canuto's complaint relate to certain documents——namely, a passport, divorce papers, a marriage contract, a certificate of employment, and a business registration form——that at some point in 2009 went missing from the safe deposit box that she had at a Bank of America branch in Panorama City, California. *Id.* at 1-2, 5-6; Am. Compl., ECF No. 10 at 11. Thus Bank of America contends that the only claim against it is one for state law breach of contract, apparently on the theory that the safe deposit box rental agreement was purportedly breached when the documents

---

resolve [a] case[ ] on the merits requires both authority over the category of claim in suit (subject-matter jurisdiction) and authority over the parties (personal jurisdiction) . . . ."). Additionally, her conclusory argument that this Court has "long-arm jurisdiction," *see* Pl.'s Opp. to Cirrus' Mot., ECF No. 18 at 2, fails because without any connections between Cirrus and the District of Columbia, the Court cannot exercise specific jurisdiction over Cirrus pursuant to the applicable District of Columbia long-arm statute, as explained above.

went missing. *See* BOA's Mem. Supp., ECF No. 16-1 at 5-6. Bank of America asserts that that breach of contract claim——which it contends accrued in 2009——is barred by the applicable three-year District of Columbia limitations period. *Id.*

Ms. Canuto has filed three separate responses to Bank of America's motion. *See* Pl.'s Opp. to BOA's Mot., ECF No. 23; Pl.'s Surreply to BOA's Reply, ECF No. 29; Pl.'s Notice to the Court, ECF No. 33. None of those responses addresses the statute of limitations issue. Instead, Ms. Canuto's responses largely focus on her contention that Bank of America has defaulted because it filed its motion to dismiss more than 21 days after it was served. *See* Pl.'s Opp. to BOA's Mot., ECF No. 23 at 1-2; Pl.'s Surreply to BOA's Reply, ECF No. 29 at 1-2.

For the reasons that follow, the Court concludes that Bank of America's motion to dismiss was timely filed and that the claims Ms. Canuto asserts against it are barred by the applicable limitations periods.

### 1.    Timeliness

"The issue of how long a defendant may wait before moving to dismiss under Federal Rule of Civil Procedure 12(b) is surprisingly confusing and the courts disagree considerably in this respect." *Luv N' Care, Ltd. v. Babelito, S.A.*, 306 F. Supp. 2d 468, 472 (S.D.N.Y. 2004). Some courts have held that "under the plain language of Rule 12(b), a motion asserting a 12(b)

defense may be filed at any time before a responsive pleading has been filed." *Thompson v. Advocate South Suburban Hosp.*, No. 15-9184, 2016 WL 4439942, at *3 (N.D. Ill. Aug. 23, 2016) (citing *Hedeen Int'l, LLC v. Zing Toys, Inc.*, 811 F.3d 904, 905 (7th Cir. 2016)); *see also Sun Microsys. Inc. v. Hynix Semiconductor Inc.*, 534 F. Supp. 2d 1101, 1118 (N.D. Cal. 2007) ("[T]he Ninth Circuit allows a motion under Rule 12(b) to be filed any time before the responsive pleading is filed."). Under this understanding of Rule 12(b), Bank of America's motion to dismiss was timely, as that motion was Bank of America's first filing and therefore it was filed before Bank of America filed a responsive pleading.

Others courts, not unreasonably, have concluded "that the timing rules for filing an answer under Rule 12(a) must also apply to motions to dismiss under Rule 12(b)." *Luv N' Care*, 306 F. Supp. 2d at 472. Those courts are thus of the view that "Rule 12 requires a motion to dismiss under Rule 12(b) to be filed before the *deadline* for pleading——either within the 21 days set by Rule 12(a) or within an extension of time granted by the Court according to Rule 6(b)." *Gillo v. Gary Cmty. Sch. Corp.*, No. 14-99, 2014 WL 3767680, at *2 (N.D. Ind. July 31, 2014). But Rule 12(a)'s 21-day pleading clock does not start to run until a defendant is properly served. *See* Fed. R. Civ. P. 12(a) (requiring a defendant to serve an answer "within 21 days after

being served with the summons and complaint"); *see also Luv N' Care*, 306 F. Supp. 2d at 471 (explaining that if a defendant has not been served, its time to respond under Rule 12(a) has "not . . . begun").

Here, Ms. Canuto attempted to serve Bank of America by mailing the summons and the complaint to a Bank of America branch in California. *See* Pl.'s Opp. to BOA's Mot., ECF No. 23 at 1. Under an analysis that should be familiar at this point, *see supra* Part II.A.2, this attempted service was deficient: First, under Federal Rule 4(h)(1)(B), service by mail was inadequate. *Wesenberg*, 2015 WL 5599012, at *2. Second, even assuming that a cashier or assistant cashier or some other enumerated agent was delivered the summons and the complaint at the Bank of America branch where service was attempted, *see* Cal. Civ. Proc. Code § 416.10, Ms. Canuto has not demonstrated that she has complied with the California service by mail requirement that two copies of a notice and acknowledgement form be provided to the person to be served, nor has she demonstrated that she complied with the requirement of providing "a return envelope, postage prepaid, addressed to the sender." *See* Cal. Civ. Proc. Code § 415.30. Accordingly, service under California law was deficient. Third, under District of Columbia law, Ms. Canuto has not demonstrated that the person to whom the summons and the complaint was delivered at the Bank of America branch was an

authorized recipient of service, *see* D.C. Super. Ct. R. Civ. P. 4(h)(1)(B); *see Bazarian Int'l Fin. Assocs., LLC v. Desarrollos Aerohotelco, C.A.*, 168 F. Supp. 3d 1, 13 (D.D.C. 2016) ("[T]he plaintiff bears the burden of demonstrating that service has been effected properly."), nor has she demonstrated compliance with the District of Columbia's service by mail requirements. *See* D.C. Super. Ct. R. Civ. P. 4(c)(4) (requiring that a return receipt be requested), 4(c)(5) (requiring delivery of notice and acknowledgment forms and "a return envelope, postage prepaid, addressed to the sender"). Thus, even if the Court were to conclude that, per Rule 12(a), a Rule 12(b) motion must be filed within 21 days of service, the Court cannot conclude that Bank of America missed its filing deadline: Without proof that Bank of America was properly served, the Court cannot conclude that Bank of America's 21-day clock ever started running.

Accordingly, whatever the appropriate rule for the timeliness of a Rule 12(b) motion, Bank of America's Rule 12(b)(6) motion was timely filed in this case.

### 2. Statutory Time Limitations

Federal Rule of Civil Procedure 12(b)(6) "is the vehicle for asserting the affirmative defense of statutory time limitation." *Peart v. Latham & Watkins LLP*, 985 F. Supp. 2d 72, 80 (D.D.C. 2013). Because statute of limitations issues often depend on contested questions of fact, "a defendant is entitled

to succeed on a Rule 12(b)(6) motion to dismiss brought on statutes of limitations grounds only if the facts that give rise to this affirmative defense are clear on the face of the plaintiff's complaint." *Lattisaw v. District of Columbia*, 118 F. Supp. 3d 142, 153 (D.D.C. 2015).

Liberally construing Ms. Canuto's filings, the Court discerns that she is attempting to assert the following claims against Bank of America: state common law claims for breach of contract,[17] trespass, assault, battery, invasion of privacy, intentional infliction of emotional distress, and negligence, *see* Am. Compl., ECF No. 10 at 11-12, 15-16, 40; Pl.'s Opp. to BOA's Mot., ECF No. 23 at 2; Pl.'s Surreply to BOA's Reply, ECF No. 29 at 2, and federal law claims under 42 U.S.C. § 1981 and 42 U.S.C. § 1983. *See* Am. Compl., ECF No. 10 at 20, 39.[18] Given the facts alleged in Ms. Canuto's amended complaint, all of these claims against Bank of America are conclusively time barred.

---

[17] Ms. Canuto's amended complaint states that she is not making a breach of contract claim, Am. Compl., ECF No. 10 at 20, but in a later filing she says that one of her claims against Bank of America is for breach of contract. Pl.'s Surreply to BOA's Reply, ECF No. 29 at 2.

[18] To the extent that Ms. Canuto seeks to assert a claim under 18 U.S.C. § 242 against Bank of America, that claim is barred because there is no private right of action under § 242. *McCray v. Holder*, 391 F. App'x 887, 888 (D.C. Cir. 2010) (per curiam).

### i. State Law Claims

"When deciding state-law claims under diversity or
supplemental jurisdiction, federal courts apply the choice-of-
law rules of the jurisdiction in which they sit." *Ideal Elec.
Sec. Co. v. Int'l Fid. Ins. Co.*, 129 F.3d 143, 148 (D.C. Cir.
1997). "Because the District of Columbia treats the statute of
limitations as a procedural issue rather than a substantive one,
the law of the forum state applies, as it does with respect to
all procedural matters." *Gaudreau v. Am. Promotional Events,
Inc.*, 511 F. Supp. 2d 152, 157 (D.D.C. 2007) (internal quotation
marks omitted). Accordingly, District of Columbia law provides
the limitations periods for Ms. Canuto's state law claims. Under
District of Columbia law, none of the state law claims asserted
against Bank of America has a statute of limitations longer than
three years. *See FiberLight, LLC v. WMATA*, No. 16-2248, 2017 WL
2544131, at *8 (D.D.C. June 12, 2017) (three-year statute of
limitations for a breach of contract claim under D.C. Code § 12-
301(7)); *Tolbert v. Nat'l Harmony Mem'l Park*, 520 F. Supp. 2d
209, 211-12 (D.D.C. 2007) (three-year statute of limitations for
a trespass claim under D.C. Code § 12-301(3)); *King v. Barbour*,
No. 16-727, 2017 WL 782880, at *2 (D.D.C. Feb. 28, 2017) (one-
year statute of limitations for an assault claim under D.C. Code
§ 12-301(4)); *Battle v. District of Columbia*, 21 F. Supp. 3d 42,
47 (D.D.C. 2014) (one-year statute of limitations for a battery

claim under D.C. Code § 12-301(4)); *Doe v. Se. Univ.*, 732 F. Supp. 7, 8 (D.D.C. 1990) (one-year statute of limitations for an invasion of privacy claim); *Thong v. Salon*, 634 F. Supp. 2d 40, 43 (D.D.C. 2009) (three-year statute of limitations for an intentional infliction of emotional distress claim but a shorter statute of limitations when that claim is "intertwined" with claims that have a shorter statute of limitations); *Swanson v. Howard Univ.*, No. 17-127, 2017 WL 1377901, at *3 (D.D.C. Apr. 13, 2017) (three-year statute of limitations for a negligence claim under D.C. Code § 12-301(8)). The statutory period begins to run "from the time the right to maintain the action accrues." D.C. Code § 12-301. The cause of action accrues "when the plaintiff knows or through the exercise of due diligence should have known of the injury." *See District of Columbia v. Dunmore*, 662 A.2d 1356, 1359 (D.C. 1995) (internal quotation marks omitted).

Here, Ms. Canuto was or should have been aware of any injury caused by Bank of America at some unspecified time in 2009, as that is when she noticed that documents had gone missing from her safe deposit box in a Bank of America branch in California and when, accordingly, she ceased using her safe deposit box at that Bank of America branch. *See* Am. Compl., ECF

No. 10 at 11-12.[19] Thus her state law claims against Bank of America accrued in 2009. In waiting to file suit until November 16, 2016, approximately seven years after Bank of America's actions that allegedly caused her injury, Ms. Canuto brought her state law claims against Bank of America too late. Those claims are time barred.

## ii. Federal Law Claims

Ms. Canuto's federal statutory claims against Bank of America under 42 U.S.C. § 1981 and 42 U.S.C. § 1983 are also time barred.

Section 1981 prohibits racial discrimination with respect to the right of "[a]ll persons within the jurisdiction of the United States . . . to make and enforce contracts." 42 U.S.C. § 1981. If a § 1981 claim relates to conduct that occurred after the formation of the contract in question, then it "is governed by the federal four-year limitations period found in 28 U.S.C. § 1658." *Lattisaw*, 118 F. Supp. 3d at 156-57 (internal quotation marks omitted). Because Ms. Canuto entered into a safe deposit box rental contract with Bank of America in 2005 but complains about Bank of America's conduct from 2009, *see* Am. Compl., ECF No. 10 at 11, she challenges only post-contract formation

---

[19] Ms. Canuto alleges that Bank of America is still billing her for a safe deposit box. *See* Pl.'s Notice to the Court, ECF No. 33 at 1-2. That allegation does not appear to be connected to any of her claims against Bank of America.

conduct and, accordingly, her § 1981 claim is subject to a four-year limitations period running from the date on which that claim accrued. The latest that that claim could have accrued was on some unspecified date in 2009 when, again, Ms. Canuto was or should have been aware of the injury that Bank of America allegedly inflicted: permitting documents to go missing from a safe deposit box located at a Bank of America branch in California. *See* Am. Compl., ECF No. 10 at 11-12; *Lattisaw*, 118 F. Supp. 3d at 157 (assuming that the discovery rule applies in the context of a § 1981 claim and explaining that that rule mandates that the statute of limitations period begins to run when a plaintiff is aware or should be aware of the injury). Because the instant action commenced on November 16, 2016, more than four years after Ms. Canuto's § 1981 claim against Bank of America accrued, that claim is time barred.

And even putting to the side that Bank of America does not act under the color of state law and thus a § 1983 claim cannot be maintained against it, *see Quezada v. Marshall*, 915 F. Supp. 2d 129, 135 (D.D.C. 2013) (citing *Williams v. United States*, 396 F.3d 412, 414 (D.C. Cir. 2005)),[20] the § 1983 claim against Bank

---

[20] To the extent that Ms. Canuto means to assert Fourteenth Amendment constitutional claims against Bank of America outside of the vehicle of the § 1983 claim, *see* Am. Compl., ECF No. 10 at 5, those claims are similarly barred. *See Williams*, 396 F.3d at 414 ("Courts generally treat 'under color' of law . . . as

of America is barred on statute of limitations grounds. Even though Bank of America's conduct and Ms. Canuto's alleged injury occurred in California, this Court "looks[s] to District law for the applicable statute of limitations" for Ms. Canuto's § 1983 claim. *See Jones v. Kirchner*, 835 F.3d 74, 80-81 (D.C. Cir. 2016) (applying the statute of limitations imposed by District of Columbia law to a § 1983 claim brought in the District of Columbia even though the alleged constitutional tort occurred in Maryland). The applicable limitations period is three years. *Id.* at 81. A § 1983 claim generally accrues when the alleged wrongful conduct occurs. *See Muñoz v. Bd. Of Trs. of the Univ. of the Dist. of Columbia*, 427 F. App'x 1, 4 (D.C. Cir. 2011) (per curiam). Because the alleged wrongful conduct undergirding Ms. Canuto's § 1983 claim against Bank of America occurred on some unspecified date in 2009, her § 1983 claim against Bank of America accrued in 2009. Because the instant action commenced on November 16, 2016, more than three years after Ms. Canuto's § 1983 claim against Bank of America accrued, that claim is time barred.

Accordingly, because all of the claims asserted against Bank of America are barred on statute of limitations grounds, the Court **GRANTS** its motion to dismiss.

---

the same thing as the 'state action' required under the Fourteenth Amendment.") (some internal quotation marks omitted).

## III. Conclusion

For the foregoing reasons, DePauw's motion to quash and/or dismiss is **GRANTED IN PART** and **DENIED IN PART;** Cirrus' motion to dismiss is **GRANTED;** and Bank of America's motion to dismiss is **GRANTED.** A separate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:**    **Emmet G. Sullivan**
**United States District Judge**
**August 10, 2017**